PAGE D. WARREN, Respondent, v. W. E. SLAYBAUGH, as Sheriff of Ward County, North Dakota, Marguerite Vold, Krueger & Co., a Corporation, W. F. Krueger and Jessie E. Y. Krueger. JESSIE E. Y. KRUEGER and Marguerite Vold, Appellants.

(235 N. W. 689.)

Opinion filed March 21, 1931. Rehearing denied April 15, 1931.

*Palda, Brace & Palda* and *Nestos, Herigstad & Stenersen,* for appellant.

*McGee & Goss* and *I. H. Breaw,* for respondent.

BURR, J. This case involves rights to redeem real property situated in the City of Minot.

At first the Riverdale Homes Company owned the property and deeded to Warren for him to mortgage it to pay outstanding indebtedness and incumbrances. After this mortgage was made, Warren reconveyed to the company.

By contract dated September 1, 1926, the Riverdale Homes Company sold the property to petitioner for $5,200, he assuming the mortgage and agreeing to pay $52 per month on the remainder with interest at six per cent, and the taxes and interest on the mortgage. At the time of his attempted redemption he had paid $1,826.60, on his contract. The attempt to question this amount is not sustained by the evidence.

On September 7, 1926, the Riverdale Homes Company mortgaged this property to the Rogers Lumber Company to secure the payment of $441.78, which mortgage was recorded on September 9, 1926; petitioner having no actual notice of this mortgage.

On April 8, 1927, the Remington Cash Register Company docketed in the district court of Ward County, a judgment for $586.58 against

the Riverdale Homes Company, which judgment is now held by Marguerite Vold.

On November 22, 1927, W. F. Krueger docketed in the district court of Ward County a judgment against the Riverdale Homes Company for $268.25.

On April 2, 1928, the mortgage given to the Rogers Lumber Company was foreclosed by advertisement, the premises purchased by the mortgagee who assigned the certificate to one we call the purchaser.

On May 2, 1928, one Minnie Gutterud docketed in the district court of Ward County a judgment against the Riverdale Homes Company on which there was due $125.54 and interest.

On April 2, 1929, the year of redemption expired and the Riverdale Homes Company made no attempt to redeem.

On April 2, 1929, W. F. Krueger, as a judgment creditor, tendered to the sheriff the amount due the purchaser.

On April 2, 1929, the defendant Krueger and Company attached this property in an action brought by it against the Riverdale Homes Company to recover the sum of $1,500. No judgment was entered on this claim.

Later, on the same day, Krueger and Company, by W. F. Krueger its agent, claiming to be a creditor with a lien, tendered to the sheriff the amount paid by W. F. Krueger together with the amount of W. F. Krueger's judgment and demanded a certificate of redemption, W. F. Krueger accepting the money.

On April 3, 1929, Jessie E. Y. Krueger filed an assignment to her of the Gutterud judgment.

On April 4, 1929, Marguerite Vold tendered to the sheriff the amount due upon the mortgage foreclosure, and no more.

On the same day the petitioner tendered to the sheriff the amount due upon the foreclosure, and no more.

On April 10, 1929, Jessie E. Y. Krueger attached this property in an action against the Riverdale Homes Company on her claim for $441.78. No judgment was entered on this claim.

On April 12, 1929, Jessie E. Y. Krueger, as holder of the Gutterud judgment and by virtue of the attachment lien in her action against the Riverdale Homes Company, tendered the amount paid by Krueger and Company together with the amount of the claim of Krueger and

Company and demanded a certificate of redemption, Krueger and Company accepting the money tendered it.

The sheriff, not being certain as to the rights of the different parties, refused to issue a deed to any of them. The petitioner applied for a writ of mandamus to compel the sheriff to issue a deed to him. Marguerite Vold and Jessie Krueger were not made parties; but Jessie Krueger intervened and petitioned for a writ requiring the sheriff to issue a deed to her, at the same time moving to quash the alternate writ issued in this proceeding. Marguerite Vold also intervened, asking that a deed be issued to her.

The trial court held that Page D. Warren is a redemptioner, has tendered a sufficient amount to redeem and is entitled to the sheriff's deed. Both Jessie Krueger and Marguerite Vold appeal. There is a stipulation that these appeals be consolidated and determined in the same hearing.

The contentions of the parties may be summarized as follows: The petitioner claims that not only is he the successor in interest of the mortgagor; but, having bought the land on contract for sale, he has, under § 6865 of the Code (Comp. Laws 1913), which says: "One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back in case of a failure of consideration," a lien on this property for the amount he paid on his contract, being an equitable mortgagee, a creditor with a lien by mortgage, a redemptioner with the right to redeem after the expiration of one year; that because of his possession the judgment creditors are charged with knowledge of his rights; that as his lien is superior to any lien claimed by the defendants all he is required to tender is the amount due the purchaser on the foreclosure sale; that having done so, and no one having redeemed from him, he is entitled to the deed.

Appellants contend that Warren is not a redemptioner—merely the successor in interest of the mortgagor—and that his right to redeem expired with the year of redemption. Jessie Krueger says, that though Marguerite Vold held a lien superior to W. F. Krueger and Krueger and Company, yet on redemption she is required to pay what Krueger and Company paid; that not having done so she has not made a valid

redemption; and therefore when she, Jessie Krueger, tendered what Krueger and Company had paid on its redemption together with the claim of the latter which she says is superior to her claim, she has paid what is necessary to redeem; that this being accepted by the redemptioners who acted ahead of her, no one can question her right and she is entitled to the deed.

Marguerite Vold says the W. F. Krueger and Gutterud judgments are inferior to her judgment; that Krueger and Company has no right as redemptioner because its lien is a lien by attachment on an unliquidated account; that to redeem she is not required to tender any sum except what was paid to the purchaser at the foreclosure sale; that Jessie Kreuger has no right as a redemptioner under her lien of attachment for an unliquidated claim; and not having tendered to her, Marguerite Vold, the amount of the Vold judgment Jessie Krueger has made no redemption.

The real issue is who is a redemptioner, and, the amount required to be tendered when a prior redemption has been made by an inferior lien holder.

Section 8085 specifies two classes who have a right to redeem: "The mortgagor or his successor in interest in the whole or any part of the property," and, "a creditor having a lien by judgment or mortgage on the property sold, . . . subsequent to that on which the property was sold. "Such creditor is termed a redemptioner." It says also redemption from a mortgage foreclosure sale is made "in like manner and to the same effect as provided . . . for redemption of real property sold upon execution so far as the same may be applicable." But, though § 7753, dealing with redemption from sales under executions says: "A creditor having a lien by judgment, mortgage or otherwise on the property, etc.," is a redemptioner, yet redemption from mortgage foreclosure sales by advertisement is, in this respect, governed by the provision of § 8085 which limits redemptioners to those "having a lien by judgment or mortgage on the property sold." To this extent the manner and effect of execution sales are not "applicable." Thus a creditor having a lien by attachment is not a redemptioner in mortgage foreclosure sales by advertisement.

Section 7754 of the Supplement says: "The judgment debtor or redemptioner may redeem the property from the purchaser—on paying

the purchaser the amount of his purchase with eight per cent interest thereon together with the amount of any assessment or taxes which the purchaser may have paid thereon after the purchase, and interest at the same rate on such amount; and if the purchaser is also a creditor, having a prior lien to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien with interest." There is no claim the purchaser had another lien or paid any assessments or taxes.

Section 7755 of the Comp. Laws says: "A redemptioner in redeeming from another redemptioner must pay the sum paid on such last redemption with like interest thereon in addition as provided by the preceding section and the amount of any assessment or taxes which the last redemptioner may have paid thereon after the redemption by him with like interest on such amount and, in addition, the amount of any liens held by said last redemptioner prior to his own with interest.. . . . The property may be again, . . . redeemed from any previous redemptioner within sixty days after the last redemption on paying the sum paid on the last previous redemption with interest at the same rate as provided for the first redemption . . . in addition . . . and the amount of any liens, . . . held by the last redemptioner previous to his own, with interest."

W. F. Krueger, being a redemptioner, redeemed within the year, and thus brought into effect the provision for the sixty.days' extension.

Under the situation presented by these appeals we are required to determine the amount which must be tendered in order to effect a redemption.

There are three classes of payments to be made by a redemptioner, under varying circumstances, first, the amount paid by the purchaser, with interest; second, "the amount of any assessment or taxes which the purchaser may have paid thereon after the purchase and interest." (not involved here); and, third, the liens of a prior redemptioner if previous to his.

Where creditors "having a lien by judgment or mortgage" desire to redeem they are not required to redeem in the order of the priority of their liens. The creditor who first redeemed in this case was required to pay the amount which the purchaser paid out with interest,

and this amount was the redemption money. Any lien he had was in addition to the redemption money.

Appellants contend that when the statute says a subsequent redemptioner "must pay the sum paid on such last redemption" it means he must pay not only the redemption money but whatever the last redemptioner may have been required to pay on liens; and thus it could be that the holder of an inferior lien could compel the holder of the superior lien to pay the inferior lien.

This is not the meaning of the statute. Redemption means buying back the land from the mortgage foreclosure sale. This is what the statute has in mind. It is not made by one who holds a lien superior to the one foreclosed, nor was it intended there should be a readjustment of priorities. The provision for the payment of liens is to make a proper adjustment between the lien holding creditors. Every redemptioner must pay the amount for which the property was sold with interest. This is due the superior lien holder who foreclosed his lien. Thus where the holder of the second lien redeems as first redemptioner he pays the amount due the purchaser. When the holder of the third lien comes in as the second redemptioner he pays the amount due the purchaser, and thus the first redemptioner gets back his redemption money; but because the first redemptioner has a superior lien he must pay off this lien. His interest in the land is not injured by doing so. When the holder of the first lien comes in as third redemptioner he must also pay the amount due the purchaser with interest, which amount goes to the second redemptioner. But though the third lien holder, as second redemptioner, was compelled to pay the lien of the second lien holder, who was the first redemptioner yet this third redemptioner is not required to pay the lien of the first and second redemptioners, though the second redemptioner had to pay to the first redemptioner because the lien of the latter was previous to his. To require him to do so would be to destroy his priority. The contention of appellant Krueger would create a situation where, with land charged with a dozen mortgages, payment of these liens could be compelled in practically the reverse order of their priority—evidently not the intent of the legislature.

The second redemptioner, being the third lien holder is not injured. He still has his own lien and the lien of the first redemptioner; and

may yet redeem from the third redemptioner by paying this first lien. When he decides to redeem he knows exactly what is ahead of him. The order is not altered by limiting collection of such other liens to those previous to the one belonging to him who seeks to redeem. That this is no useless act is clear when we consider a case where there are but two liens inferior to the one foreclosed and the later of these redeems. The earlier one in redeeming from him does not pay his lien, merely the purchase money; but the later one, if he still seeks the land must again redeem from the earlier one and pay back to him the purchase money received in the redemption from him. No one disputes this. Thus priority is preserved, and it is no more of a hardship to require the inferior lien holder to repay the purchase money which he receives and then the superior lien, simply because there are three or more lien holders. O'Leary v. Schoenfeld, 30 N. D. 374, 152 N. W. 679, is not contrary to this for therein it was not the holder of a prior mortgage who was seeking to redeem. While Leverson v. Olson, 25 N. D. 624, 142 N. W. 917, refers to "the useless ceremony of redeeming both from the person who had just redeemed from him," (629) therein we were considering a lien superior to the one foreclosed.

Failing to redeem in the order of priority does not waive rights under the lien. In Bank of Mowbray v. Kelland, 33 N. D. 383, 157 N. W. 291, this court said, referring to redemption: "Do they, in short, by failing to themselves redeem during the year and by allowing the fourth mortgagee so to do, waive by such delay the lien of their mortgages and their consequent right of redemption, or, if allowed to redeem at all, are they merely allowed so to do on condition that they surrender their places as prior encumbrancers, and pay not only the amount due on the original foreclosure sale, but on the lien of the redemptioner and subsequent encumbrancer from whom they redeem?" We held they did not. While the precise point involved here is not involved in the case cited, yet we showed therein that a redemptioner holding an inferior lien is not injured when he gets back from the mortgage sale the amount paid to redeem and no more, saying: "It is true that the latter paid out its money in order to redeem from the first mortgage, but it is entitled to the repayment of that money with interest thereon, and in contemplation of the law this will

fully compensate it for the loss of its use." Thus we intimated priority governed during the time one redemptioner redeemed from another.

Appellant Krueger urges that § 7753 of the Supplement clearly evidenced the intent of the legislature to compel payment of inferior liens if required to be paid by prior redemptioners. The language of this section does not differ materially from that used in § 7755 already construed, except so far as it makes provision permitting redemption by paying a portion of the lien to be taken up. It does not pretend to alter priority.

It is evident that Marguerite Vold tendered to the sheriff a sufficient amount to entitle her to redeem from the prior redemptions by W. F. Krueger, and Krueger & Company. All she was required to tender was the amount due upon the mortgage foreclosure, her lien being superior to all the liens held by W. F. Krueger, Krueger & Company and Jessie E. Y. Krueger. W. F. Krueger, Krueger & Company and Jessie E. Y. Krueger not having redeemed from Marguerite Vold, and the time for redemption having expired they lost all interest in the land. Therefore, so far as W. F. Krueger, Krueger & Company and Jessie E. Y. Krueger are concerned, the judgment is affirmed.

Owing to the meagerness of the record in this case, in matters fundamental to the claimed rights of Warren, the court finds it impossible to determine the relative rights of Warren and Marguerite Vold on the face of the record.

While this whole controversy comes before us on applications for a writ of mandamus the proceedings have taken the nature of actions to determine adverse claims to land. The theory upon which the applications were tried and the theory upon which they were presented to this court being the same, we attempt to determine the action in accordance with the theory of the trial. To do this however it is necessary to have some vital points clearly established. We require these additional facts relative to two important questions: 1st, Was the petitioner Warren in possession of the land at the time the mortgage to the Rogers Lumber Company was given? 2nd, Did the Rogers Lumber Company have knowledge of the negotiations between the Riverdale Homes Company and petitioner Warren for the purchase of the land at the time it took the mortgage, the basis of the controversy,

and if so, to what extent? The case is therefore remanded to the district court and petitioner is required to give thirty days' notice to Marguerite Vold of the time when such further testimony will be taken, the matter to be brought on for hearing not less than sixty days from the filing of the remittitur, unless continued by the district court on proper showing. The trial court is required to make findings based on this additional testimony, if any furnished, and certify the same to this court, or any other proceedings had in this matter.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.